**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**JAMES JONES,**

                **Petitioner,**        **06 Civ. 225 (JGK)**

      **- against -**          **MEMORANDUM OPINION AND**
                                         **ORDER**

**JAMES WALSH, SUPERINTENDENT, SULLIVAN**
**CORRECTIONAL FACILITY**

                **Respondent.**
─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

Petitioner James Jones seeks a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. The petitioner argues that he was
not responsible for his crimes by reason of mental illness or
defect and was not fit to proceed at the time of his guilty
plea, and that he received ineffective assistance of counsel
because his counsel failed to raise these issues.


                I.

On September 17, 1996, the petitioner entered a plea of
guilty in the New York State Supreme Court, New York County, to
two counts of murder in the second degree for the deaths of two
women in February and June, 1995, and to one count of sodomy in
the first degree and two counts of attempted sodomy in the first
degree for attacks on three other women in April, October, and
September, 2005. (Ex. E to Aff. of Richard Sullivan dated May

30, 2007.)[1]  The plea was in full satisfaction of a twenty-three

count indictment that included various charges arising out of

the attacks on the five women and one count of criminal

possession of a weapon in the first degree.  The petitioner was

sentenced on October 1, 1996, to twenty-five years to life on

the two murder counts to run concurrently, and two to six years

on each of the remaining three counts to run concurrently and

consecutively to the sentences on the murder counts, so that the

total sentence was twenty-seven years to life.  (Ex. F.)

    In December 1998, the petitioner filed a direct appeal to

the New York State Supreme Court, Appellate Division, First

Department.  The petitioner argued only that his sentence was

unduly harsh in view of his grave psychiatric problems,

childhood physical abuse, and stable employment history and

service record.  (Ex. G.)  The judgment was affirmed without

opinion on April 13, 1999.  People v. Jones, 689 N.Y.S.2d 595

(App. Div. 1999).  The petitioner then sought leave to appeal to

the Court of Appeals; the petitioner's application was denied on

August 10, 1999.  People v. Jones, 719 N.E.2d 940 (N.Y. 1999).

    On October 23, 2003, the petitioner moved under Section

440.10 of the New York Criminal Procedure Law ("CPL") to vacate

his conviction.  The petitioner argued, among other grounds for

---

[1] Unless otherwise indicated, citations to "Ex." are to Exhibits to the
Sullivan Affirmation.

his motion, that he was not fit to proceed at the time of his plea and sentence, that he was not responsible for his crimes by reason of mental disease or defect, and that he received ineffective assistance of counsel because his counsel failed to raise these issues. (Ex. M.) The court denied the motion on June 14, 2004. The court specifically found that the plea allocution minutes showed that the petitioner understood the nature of the charges, fully comprehended the meaning of the pleas, and pleaded guilty voluntarily. The court pointed out that the petitioner was represented by a team of highly experienced attorneys who, after months of psychiatric testing to determine the viability of a psychiatric defense, elected to pursue a plea rather than a psychiatric defense. The court found that the petitioner waived any psychiatric defense and that there was nothing in the record to support an argument that the petitioner was not competent at the time of his plea. (Ex. Q.)

The petitioner's subsequent application for leave to appeal to the Appellate Division was denied on October 5, 2004. (Ex. V.) The current petition for a writ of habeas corpus is dated September 26, 2005 and was filed in the Pro Se Office of this Court on September 28, 2005.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, imposes a one-year statute of limitations on an application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). This one-year period generally runs from the date on which the judgment becomes final by the conclusion of direct review or the expiration of time to seek such review. 28 U.S.C. § 2244(d)(1).

The New York State Court of Appeals denied the petitioner leave to appeal his sentence on August 10, 1999. Accordingly, the judgment became final on November 9, 1999, upon the expiration of the ninety-day period during which the petitioner could have sought a writ of certiorari from the United States Supreme Court. See Williams v. Artuz, 237 F.3d 147, 148—49 (2d Cir. 2001).

AEDPA's one-year statute of limitations expired one year from this date, on November 9, 2000, and the petition is therefore untimely. The time during which a properly filed application for state post-conviction or other collateral review of a conviction is pending is not counted toward the running of the statute of limitations. See 28 U.S.C. § 2244(d)(2). The petitioner did move in 2003 pursuant to CPL § 440.10 to vacate the judgment. However, that motion does not render the present

habeas corpus petition timely, because that motion was filed substantially after the one-year statute of limitations had already expired.  Moreover, that motion did not restart the statute of limitations.  An application for state relief "does not reset the date from which the one-year statute of limitations begins to run" under 28 U.S.C. § 2244(d)(1).  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).


                                B.

     The petitioner asks that his failure to comply with AEDPA's one-year limit be excused due to mental illness.  (Petr.'s Affirmation ¶ 4.)  Essentially, the petitioner seeks equitable tolling of the statute of limitations.  Equitable tolling applies only "in the rare and exceptional circumstance[]." McGinnis, 208 F.3d at 17 (internal citation omitted).  In order to qualify for equitable tolling, the petitioner must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also McGinnis, 208 F.3d at 17.  A petitioner's mental illness may be sufficient for equitable tolling of the statute of limitations, but only if it rendered the petitioner unable to pursue his legal rights during the relevant time period.  See Rhodes v. Senkowski, 82 F.Supp.2d 160, 168-70 (S.D.N.Y. 2000) (report of magistrate judge

collecting cases).  The mere existence of a mental illness is
insufficient to toll the statute of limitations.  See Cox v.
Edwards, No. 02 Civ. 7067, 2003 WL 22221059, *3 (S.D.N.Y. Sept.
26, 2003); Jean-Louis v. Greiner, No. 02 Civ. 6326, 2003 WL
1807144, *3 (S.D.N.Y. Apr. 4, 2003); Rhodes, 82 F.Supp.2d at
169-70.

Equitable tolling is not appropriate in this case.  Nothing
in the medical records before the Court establishes that the
petitioner's mental condition prevented him from pursuing his
legal remedies during the period that the petitioner seeks to
toll — that is, after judgment became final on November 9, 1999.
The records submitted by the petitioner in support of his
petition related to the petitioner's psychological evaluations
at Riker's Island from January, 1996 through June, 1996.  (See
Petr.'s Exs. B-H, 1-5.)

Nothing in the records before the Court demonstrates that
the petitioner suffered from such a severe mental illness that
he was impeded from filing a habeas corpus petition.  Although
the petitioner had once been hospitalized for psychiatric care
when he was in the fifth grade, he was never again hospitalized
for mental health reasons after adolescence prior to his arrest.
(Ex. E.)  The petitioner is a man of average intelligence, with
a Full Scale IQ score of 98. (Ex. E.)  After serving in the Army
and receiving a "general discharge under honorable condition,"

he completed two semesters of higher education as a business student at Pace University in New York City before dropping out due to financial difficulties. (Ex. E.)  The petitioner was gainfully and stably employed from 1980 until the time of his arrest in October 1995 as a security guard at Guard Management Security Company.  During the year immediately prior to his arrest, the period in which he allegedly committed the crimes with which he was charged, the petitioner simultaneously held a second job as an audio/visual technician for a bar association in New York City.  (Ex. E.)

The petitioner was hospitalized at Bellevue Hospital immediately after his arrest.  Psychiatric staff observed the petitioner between October 24, 1995 and January 2, 1996,[2] and found that he was oriented to person, place and time, that his thought processes were "coherent and relevant," and that he was "functioning within the average range of intelligence."  (Ex. E.)  While under observation, the petitioner was sufficiently rational so as to "[use] his writing skills as a means of allaying the difficult emotions he [was] experiencing."  (Ex. E.)

Neither the Discharge Summary nor the attached Psychological Test Report concluded that the petitioner was

---

[2] The petitioner's Discharge Summary erroneously lists his year of discharge as 1995.

schizophrenic or otherwise psychotic. The petitioner was found to be "psychiatrically stable." (Ex. E.) The Psychological Test Report approved by Dr. Sanford Drob, then the Director of Psychological Assessment at Bellevue Hospital, found "no evidence of a formal thought disorder" and concluded, "there is no evidence supporting the presence of a schizophrenic spectrum disorder." (Ex. E.) The petitioner was ultimately diagnosed with adjustment and personality disorders, rather than a psychotic disorder. (Ex. E.)

The fact that the petitioner filed a CPL § 440.10 motion and supporting letter in 2003, during the period in which the petitioner claims to have been impeded from filing his habeas petition, also undermines the petitioner's argument. The petitioner has not explained how his purported incapacitation prevented him from bringing a timely application for a writ of habeas corpus but did not prevent him from bringing a CPL § 440.10 motion during the same period.

The petitioner asserts that he had no involvement with the CPL § 440.10 motion and that the motion was in fact made entirely by a legal assistant on his behalf. (Ex. X.) At a minimum, however, the petitioner provided information and assistance concerning the procedural history of the case, his personal history, and his medical history. (Ex. M.) Furthermore, the petitioner has not explained why, even if the

CPL § 440.10 motion was made with legal assistance, he could not similarly have received such assistance in order to file his habeas claims in a timely manner.

In sum, the petitioner has not established that an extraordinary condition rendered him unable to pursue his rights, and equitable tolling is not warranted.  See Pace, 544 U.S. at 418—19; McGinnis, 208 F.3d at 17—18; Cox, 2003 WL 22221059 at *3 (that petitioner suffered from Grave's disease, mood and paranoia swings, and had been hospitalized and given medication insufficient to toll limitations period); Jean-Louis, 2003 WL 1807144 at *3 (allegations of mental illness and taking psychotropic medication insufficient to toll limitations period); Rhodes, 82 F. Supp. 2d at 169-70 (allegations of physical and mental ailments insufficient to toll limitation period).

## III.

In any event, the petition is without merit.  The petitioner seeks a writ of habeas corpus on the grounds that he was not responsible for his crimes by reason of insanity and was not fit to proceed at the time of his plea of guilty, and that he received ineffective assistance of counsel because his counsel failed to raise these issues at trial.

The petitioner raised these claims in his CPL § 440.10 motion to the New York State Supreme Court. That court denied the claims, finding that the petitioner had waived any psychiatric defense by pleading guilty; that the petitioner was competent at the time of his plea; and that the petitioner had not received inadequate assistance of counsel. (Ex. Q.)

This Court may not grant an application for a writ of habeas corpus unless the challenged state court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 402—03 (2000); Lynn v. Bliden, 443 F.3d 238, 245—47 (2d Cir. 2006); Graham v. Lape, 476 F.Supp.2d 399, 402 (S.D.N.Y. 2007).

A state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams, 529 U.S. at 405.

A state court decision involves "an unreasonable application of ... clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case...." Williams, 529 U.S. at 407—08. To meet that standard, "the state court decision [must] be more than incorrect or erroneous . . . [it] must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted). As discussed below, the petitioner fails to meet this burden.

A.

The petitioner argues that he was insane at the time of the offenses he allegedly committed. The state court determined that this psychiatric defense was waived. This Court could not find that the state court finding of waiver was based on an unreasonable determination of the facts. The defense plainly explored the possibility of a psychiatric defense and filed a Notice of Motion to Present Psychiatric Evidence. (Ex. C.) However, more than five months later the petitioner entered his

guilty plea without asserting any psychiatric defense.  There
was no evidence at the plea that the plea was other than knowing
and voluntary.  As the court noted in denying the petitioner's §
440.10 motion, "[t]he plea allocution minutes show that
defendant understood the nature of the charges, fully
comprehended the meaning of the plea and pled guilty
voluntarily."  (Ex. Q.)  The records before this Court do not
indicate that the petitioner was in fact insane at the time of
the offenses to which he pleaded.

       As a matter of law, it was not contrary to or an
unreasonable application of clearly established federal law, as
determined by the Supreme Court, for the state court to find
that the petitioner had waived any psychiatric defense.  The
Supreme Court has held that a guilty plea, intelligently and
voluntarily made, generally precludes subsequent constitutional
challenges to the pretrial proceedings.  Brady v. United States,
397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970);
Parker v. North Carolina, 397 U.S. 790 (1970); see Lefkowitz v.
Newsome, 420 U.S. 283, 287 (1975).  Accordingly, a plea of
guilty waives all non-jurisdictional challenges to the prior
proceedings.  Hayle v. United States, 815 F.2d 879, 881 (2d Cir.
1987); United States v. Doyle, 348 F.2d 715, 718 (2d Cir. 1965).

       Although the Supreme Court has never ruled on the question
of whether insanity is a jurisdictional issue, several courts

have held it to be non-jurisdictional.  See Bakic v. United States, 971 F. Supp. 697, 700 (N.D.N.Y. 1997) (voluntary guilty plea precludes subsequent collateral attack based on insanity defense); see also United States v. Donohoe, 458 F.2d 237, 239 (10th Cir. 1972) (insanity defense waived due to guilty plea); United States v. Bendicks, 449 F.2d 313, 315 (5th Cir. 1971) (insanity defense is non-jurisdictional).  Therefore, the New York State Supreme Court's determination that the petitioner waived any psychiatric defense by his guilty plea was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

## B.

The New York State Supreme Court also found that the petitioner was competent at the time of his guilty plea.  The court found:

> Nothing in the materials supplied by the defendant in connection with this motion . . . demonstrates that the defendant was incompetent at the time of his plea. The fact that the defendant was under psychiatric care in the months following his arrest . . . and that he was being treated with psychotropic medication does not establish that he was incompetent and does not warrant this court's substituting its judgment for that of the trial court . . . who had the benefit of observing defendant's conduct and demeanor at the relevant time, nearly eight years ago.

(Ex. Q.)  This deference to the trial court's determination of competence was not an unreasonable application of clearly established federal law, given the lack of evidence before the state court indicating that the trial court should have conducted further inquiry into the petitioner's mental state, and the lack of evidence before that court demonstrating that the petitioner was incompetent at the time of his plea.  In similar circumstances, the Supreme Court has treated a trial court's determination of a defendant's competence to proceed as the determination of a factual issue. See Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam).

Moreover, to the extent that the petitioner is contesting the factual determination of the state court that the petitioner was competent at the time of his plea, that factual determination cannot be found to be an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(2).  The petitioner was lucid and coherent at his plea proceeding, and his responses to every question put to him at the allocution were rational, clear, and appropriate.  The petitioner affirmed that he wished to plead guilty and that he understood that by so doing he would give up his right to a jury trial, his right to confront and cross-examine witnesses, and his right to remain silent.  He affirmed that he had not been threatened into

pleading guilty, but instead was doing so of his own free will because he was in fact guilty. He averred understanding of the possible maximum sentence he could face, and factually allocuted to the crimes to which he plead guilty. (See Ex. D.)

At no point before the plea proceeding was the petitioner ever found incompetent to stand trial. Although the petitioner's defense counsel gave notice that it intended to present psychiatric evidence, it did not request a psychiatric examination, and ultimately no such evidence was introduced. (See Ex. C.) The court was entitled to draw inferences from defense counsel's abandonment of an insanity defense. See Maggio, 462 U.S. at 117.

This case is distinguishable from Matusiak v. Kelly, 786 F.2d 536 (2d Cir. 1986), where the Second Circuit Court of Appeals did not defer to a finding of competency. In Matusiak the defendant had been found unfit to proceed by several examiners prior to entering a plea, and gave inconsistent and equivocal responses during the plea hearing itself. See id. at 537–40. The Court of Appeals accordingly found that the material facts underlying the defendant's competence to proceed had not been adequately developed at the plea hearing. Id. at 545.

In the present case, given the trial court's observation of the petitioner's demeanor at the plea hearing and the fact that

the petitioner had never been found incompetent, there is no indication that the trial court should have further developed the record of the petitioner's competence. Therefore, the decision to defer to the trial court's finding of competence was not contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States, and was not an unreasonable determination of the facts. See Maggio, 462 U.S. at 117.

C.

The petitioner's claim of ineffective assistance of counsel also fails. In order to demonstrate ineffective assistance of counsel, a habeas petitioner must meet the familiar two-part test established in Strickland v. Washington:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).

A guilty plea cannot be overturned on the basis of inadequate representation unless the counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687; see also Cuyler v.

<u>Sullivan</u>, 446 U.S. 335, 344 (1980); <u>McMann v. Richardson</u>, 397 U.S. 759, 770—71 (1970). In order to satisfy this test, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687—88. Moreover, a showing of actual prejudice requires that the petitioner affirmatively show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." <u>United States v. Couto</u>, 311 F.3d 179, 187 (2d Cir. 2002) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).

The petitioner faced the possibility of being sentenced to a substantially longer term in prison had he been convicted on all counts with which he was charged. The New York State Supreme Court, in denying the petitioner's ineffective assistance claim, found that the petitioner's plea bargain conferred a substantial benefit upon him by reducing his sentence to twenty-seven years to life. (<u>See</u> Ex. Q.) The determination that, in securing this plea, the defense counsel's performance was not unreasonably deficient under prevailing professional standards was not an unreasonable application of, or contrary to, the first prong of the <u>Strickland</u> test.

The petitioner also must show that there is a reasonable probability that, but for the challenged ineffective assistance, he would not have pleaded guilty and would have insisted on

going to trial.  <u>Couto</u>, 311 F.3d at 187; <u>see also</u> <u>Strickland</u>,
466 U.S. at 694.  There is no such showing in this case.


IV.

For all the reasons explained above, the petitioner's
application for a writ of habeas corpus is **denied**.  The Court
declines to issue a certificate of appealability pursuant to 28
U.S.C. § 2253(c) because the petitioner has failed to make a
substantial showing of the denial of a constitutional right.
The Clerk is directed to enter judgment in favor of the
respondent and to close this case.


**SO ORDERED.**

**Dated:**     New York, New York
               November 30, 2007

                                    _____
                                        John G. Koeltl
                                    United States District Judge